UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ROSE BRACKEEN

        Plaintiff,

v.

CONSTELLIS; TRIPLE CANOPY, INC.

        Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Rose Brackeen, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint against Constellis and Triple Canopy, Inc. (hereinafter the "Company") states and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an employment discrimination case arising from the Company's discrimination toward and wrongful termination of Plaintiff because she suffered from one or more disabilities within the meaning of the Americans with Disabilities Act ("ADA"). As a result of engaging in protected activity pursuant to the ADA, she was subsequently retaliated against. In addition, the Company failed to engage in the interactive process and failed to provide reasonable accommodations to Plaintiff.

2. The Company terminated Plaintiff based on her actual and/or perceived disabilities, and/or in retaliation for engaging in protected activity under the ADA.

## PARTIES

3. Plaintiff was a resident of Colorado at all times relevant to this Complaint.

4. Upon information and belief, both Constellis and Triple Canopy, Inc. are foreign corporations with a principal office street address at 12018 Sunrise Valley Drive, Suite 140, Reston, VA 20191.

## JURISDICTION AND VENUE

5. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

6. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

8. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

9. Plaintiff filed her Charge of Discrimination with the EEOC, Number 541-2019-03104, for disability and retaliation on or about November 13, 2019.  Plaintiff was issued a Notice of Right to Sue from the EEOC on May 14, 2020.

10. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

11. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

12. Upon information and belief, Constellis is the parent company to Triple Canopy, Inc.

13. Upon information and belief, Constellis controlled aspects of Plaintiff's employment and issued policies, procedures, and/or a handbook regarding Plaintiff's employment with it and Triple Canopy, Inc.

14. Plaintiff began working for Defendant around December 5, 2018 as an Alarm Monitor/Telecommunicator IV ("Alarm Monitor") working at the Denver Megacenter.

15. Plaintiff remained in that role until her termination on September 16, 2019.

16. Upon information and belief, in late 2018 Defendant was awarded a government contract, herein referred to as the "Denver Megacenter contract," to handle emergency and non-emergency services.

17. After Defendant was awarded the Denver Megacenter contract, Defendant offered positions to many employees who had previously worked on the government contract with a prior contractor, Gonzales Consulting Services ("GCS").

18. Plaintiff was one of many employees offered positions, in addition to several of her supervisors, including her supervisor Michelle Hoffman.

19. During Plaintiff's employment with Defendant, Plaintiff performed satisfactorily in her role.

20. Prior to working for Defendant, while Plaintiff was working for GCS, she was in a serious car accident in August 14, 2016 where she suffered a traumatic brain injury.

21. As a result of the car accident, Plaintiff had partial vision loss which is still ongoing since the accident.

22. While working for Defendant, Plaintiff had several accommodations in place, including but not limited to: needing breaks every few hours, shorter several minute breaks to rest her eyes, magnifiers for her computer monitors, keyboards with larger numbers and letters, and she was provided with a supervisor (training coordinator), Lisa Kirwen, who worked with her as a liaison for her accommodations at GCS.

23. To further accommodate her medical conditions, her former manager, Mark Wilson, at GCS had given Plaintiff permission to shut her eyes (instead of having to walk away from the eight computer monitors at her console) to rest them in order to satisfy the accommodation of several short eye rest breaks.

24. Upon information and belief, Mr. Wilson had also informed Plaintiff's other supervisors, including Ms. Hoffman, of those accommodations around March – June 2017, when Plaintiff had returned to work.

25. In at least one instance, Ms. Hoffman used Plaintiff's liaison, Ms. Kirwen, as a resource in communicating with Plaintiff.

26. Plaintiff's other supervisors, including Ms. Hoffman, were aware of her accommodations, because each had the occasion to witness her set up her special equipment (keyboard, magnifier, etc.) at her assigned console for each shift.

27. When the work force was hired by Defendant from GCS, Plaintiff's accommodations were still required due to the permanency of her disabilities.

28. Despite Plaintiff completing paperwork for Defendant identifying that she had a disability and needed accommodations, Defendant never followed up or contacted Plaintiff regarding her need for accommodations.

29. Defendant never engaged in any interactive process, nor discussed any accommodations with Plaintiff that she needed to perform her job duties.

30. In addition, Plaintiff continued to be supervised by Ms. Hoffman who had created and contributed to a hostile work environment, which had started while they worked together for GCS, and continued when both were hired by Defendant.

31. While working for Defendant, with the same supervisors that knew Plaintiff needed accommodations, Plaintiff's continued requests for accommodations were not met.

32. Plaintiff was also scrutinized for using the limited accommodations that she had been given. By way of example:

   a. Plaintiff's supervisors expressed frustration and confusion that Plaintiff could not perform without accommodations, especially the need for breaks;

   b. Ms. Hoffman attempted to regulate Plaintiff's work at a higher level of detail than others, and despite not being her direct supervisor, Ms. Hoffman listened in on Plaintiff's calls regularly; and

   c. Often Plaintiff was told that she needed to either read through her daily observation log/events or some other task before leaving her console for a break, which had the effect of delaying her necessary breaks by hours or denying them completely.

33. During her employment with Defendant, Plaintiff was singled out and treated differently than her coworkers because of her disabilities and need for accommodations, including but not limited to: having her work scrutinized more than other non-disabled employees, being watched by Ms. Hoffman more closely than other non-disabled employees, being berated by Ms. Hoffman, being verbally and/or written up for things that were not her fault, and being watched by

coworkers in order to report back to management.

34. In January 2019, Plaintiff still needed accommodations, including but not limited to: periodic short breaks, the magnifiers and keyboards, and reasonable modifications to her work load as some areas were busier than others.

35. Each console was set up with approximately eight monitors, two keyboards, and three or more computers, which required several modifications to make the workspace useable due to Plaintiff's disabilities.

36. While employed by Defendant, Plaintiff spoke up on repeated occasions to her supervisors, and the manager, Mr. Jeremy Kennedy, that her accommodations were not being provided. By way of example:

a. When Defendant replaced the monitors with wider monitors, her magnifiers no longer fit, but she was not provided with a replacement; and

b. When her keyboard stopped functioning, it was not replaced.

37. While Mr. Kennedy said that he would bring the matters up with Defendant, Plaintiff never received the larger magnifiers or a replacement keyboard, and this accommodation was never provided by Defendant.

38. As part of the accommodations that Plaintiff was previously granted, she would occasionally close her eyes to rest them from time to time for short periods of time.

39. Though this accommodation was widely known to management, including Ms. Hoffman, her hostile conduct had increased after transferring to Defendant's employment, and she would specifically watch Plaintiff for minutes at a time at her workstation scrutinizing Plaintiff's

work and looking for performance errors – which she did not do to Plaintiff's coworkers.

40. In addition, Ms. Hoffman and/or Mr. Kennedy also had some of Plaintiff's coworkers watching her and reporting back to them on Plaintiff's performance.

41. Ms. Hoffman would also constantly berate Plaintiff in front of her coworkers, tell Plaintiff that she was "slower" at tasks than other non-disabled coworkers, and she made false claims about Plaintiff's performance that were not substantiated.

42. On August 9, 2019, around 6:12 a.m. while Plaintiff was taking a short eye rest break, Ms. Hoffman aggressively approached Plaintiff, told Plaintiff to go for a walk in front of coworkers, and later wrongfully accused her of sleeping at work.

43. There were several witnesses to what occurred.

44. Around 10:00 a.m., Plaintiff saw Mr. Kennedy in the hallway and approached him to discuss how Ms. Hoffman had verbally attacked her.

45. Mr. Kennedy indicated that he had already heard about what occurred, and Plaintiff asked to talk to him in his office.

46. They discussed the incident and called Ms. Hoffman in as well.

47. Plaintiff was then presented with paperwork stating that she was being taken off the schedule for an undetermined amount of time.

48. Plaintiff reminded them that resting her eyes was an accommodation that she was previously provided, and Defendant was violating her accommodations.

49. Plaintiff asked if her accommodations were on file for them to refer to, and Mr. Kennedy said he did not know.

50. In addition, other non-disabled employees (Kim Carter and Janet (unknown last

name)) were seen with their eyes closed by supervisors of Defendant and nothing disciplinary was ever done to them, only to Plaintiff.

51. Plaintiff was then placed on unpaid leave as of August 9, 2019 for utilizing her pre-approved accommodation of taking a short break to rest her eyes.

52. Subsequently, around August 12, 2019, only after Plaintiff was placed on unpaid leave, Defendant started an investigation and asked her to provide documentation pertaining to her disability and accommodations.

53. Plaintiff complied with Defendant's investigation at all times.

54. The suspension was lengthy, a full 5 weeks, unpaid.

55. During that time, Defendant repeatedly failed to respond to Plaintiff's inquiries as to the status of returning to work, and Defendant failed to engaged in the interactive process and/or discuss reasonable accommodations based on the documentation it received from Plaintiff's medical providers about her disability.

56. From August 9, 2019 through her termination on September 16, 2019, in addition to the hostility that Plaintiff endured previously, she suffered anxiety, stress, fear, and other emotional distress as a result of Defendant wrongfully suspending her without pay for utilizing her accommodation and then firing her.

57. Plaintiff's need and/or seeking of accommodations pertaining to her permanent vision loss is protected activity under the ADA.

58. Defendant retaliated against Plaintiff for needing and/or seeking accommodations and/or utilizing the accommodations provided to her, such as occasionally closing her eyes to rest them.

59. Defendant failed to engage in the interactive process to determine what, if any, reasonable accommodations would be necessary for Plaintiff while she worked for Defendant.

60. After weeks of requesting information regarding the investigation and when Plaintiff could return to work, which Defendant failed to respond to, Plaintiff was terminated on September 16, 2019.

## FIRST CLAIM FOR RELIEF
**(Disability Discrimination (actual or perceived) and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

61. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

62. Plaintiff is a disabled person within the meaning of the ADA, in that Plaintiff suffered from an actual disability at the time of her termination and/or Defendant regarded Plaintiff as being disabled at the time of her termination due to Plaintiff's known medical condition.

63. Specifically, Plaintiff suffered from a traumatic brain injury, which had residual deficits that impacted her work performance such as: increased fatigue, visual impairment, and cognitive deficits including decreased memory and thought organization.

64. Plaintiff's medical providers had provided recommended accommodations, including but not limited to: screen magnifiers, utilization of adapted keyboard for visual deficits, rest breaks, assignment to less demanding/slower regions, built in time for end of day review and to check work, scheduled weekly meetings with manager to address performance or any concerns, conference calls with her medical provider to discuss progress, and implementation of visual compensation strategies.

65. When Plaintiff's medical condition is in its active state, and without taking into account ameliorative devices, Plaintiff's medical condition substantially limits one or more of Plaintiff's major life activities, including without limitation, Plaintiff's ability to see, sleep, speak, read, concentrate, think, communicate, and work as compared to most people in the general population.

66. At all relevant times, including prior to Plaintiff's termination, Defendant was aware, or should have been aware, of Plaintiff's medical condition and Plaintiff's record of having such physical impairments.

67. Plaintiff was able to perform the essential functions of her job duties with Defendant with or without reasonable accommodations.

68. Despite Plaintiff asking for accommodations, Defendant denied those requests even though they would not cause an undue hardship.

69. Defendant likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA before Defendant took disciplinary action by placing Plaintiff on unpaid leave.

70. Even after placing Plaintiff on unpaid leave, Defendant failed to engage in the requisite good faith interactive process with Plaintiff as Defendant failed to respond to Plaintiff's numerous inquiries about the investigation and when she could return to work.

71. Defendant unlawfully and intentionally discriminated against Plaintiff because of her actual and/or perceived disabilities by treating Plaintiff less favorably than similarly situated employees concerning the terms, conditions and privileges of her employment, including, without limitation, placing Plaintiff under additional job scrutiny, placing Plaintiff on unpaid leave for five

weeks, initiating a targeted investigation of Plaintiff to fabricate purported misconduct, taking disciplinary action against Plaintiff for the same conduct that non-disabled employees engaged in, and ultimately terminating Plaintiff's employment.

72. Plaintiff's disability and/or Defendant's perception that Plaintiff was disabled was the motivating factor in Defendant's decisions to subject Plaintiff to the above-described disparate treatment and terminating Plaintiff's employment.

73. The effect of the practices complained of in the paragraphs above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of Plaintiff's actual and/or perceived disability.

74. Defendant's above-described conduct was intentional.

75. Defendant's above-described conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from engaging in the same conduct in the future.

76. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of the ADA, as amended, 42 U.S.C. 12203(a))

77. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

78. Plaintiff is a member of a protected class because of her actual disability and/or

because she was regarded as being disabled, and because she had a reasonable, good faith belief that she was engaging in protected activity by attempting to exercise her rights under the ADA and requesting reasonable accommodations associated with her medical condition.

79. On numerous occasions while employed by Defendant, Plaintiff made requests for reasonable accommodations related to her actual and/or perceived disabilities, to allow her to perform the essential functions of her position. In doing so, Plaintiff was attempting to exercise her rights, and she was engaging in activity protected under the ADA.

80. Defendant retaliated against Plaintiff for attempting to exercise her right to reasonable accommodations under the ADA and retaliated against Plaintiff because she engaged in the above-described protected activity by treating Plaintiff less favorably than similarly situated employees concerning the terms, conditions and privileges of her employment, including, without limitation, placing Plaintiff under additional job scrutiny, placing Plaintiff on unpaid leave for five weeks, initiating a targeted investigation of Plaintiff to fabricate purported misconduct, taking disciplinary action against Plaintiff for the same conduct that non-disabled employees engaged in, and ultimately terminating Plaintiff's employment.

81. These consequences are of the type that would tend to discourage similarly situated employees from requesting accommodations and/or complaining about illegal discrimination.

82. A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e., Defendant retaliated against Plaintiff for exercising her rights under the ADA and placing Plaintiff under additional job scrutiny, placing Plaintiff on unpaid leave for five weeks, initiating a targeted investigation of Plaintiff to fabricate purported misconduct, taking disciplinary action against Plaintiff for the same conduct that non-disabled

employees engaged in, and ultimately terminating Plaintiff's employment, because she requested reasonable accommodations related to her actual and/or perceived disabilities.

83. Defendant's above-described conduct was intentional.

84. Defendant's above-described conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from engaging in such conduct in the future.

85. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Punitive damages for all claims as allowed by law;

C. Attorneys' fees and costs of this action;

D. Pre-judgment and post-judgment interest at the highest lawful rate; and

E. Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury to at least six persons.

Respectfully submitted this 12th day of August 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Sarah A. Schreiber*
Sarah A. Schreiber
Claire E. Hunter
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
sschreiber@hkm.com
chunter@hkm.com
*Attorneys for Plaintiff Rose Brackeen*